IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| **UNITED STATES OF AMERICA,** | |
| Plaintiff, | |
| v. | Case No. 24-CR-30117-SPM |
| **DWAYNE P. BOWDEN,** | |
| Defendant. | |

## MEMORANDUM AND ORDER

**McGLYNN, District Judge:**

This matter comes before this Court on Defendant Dwayne P. Bowden's Motion to Dismiss Indictment (Doc. 22) as violative of the Second Amendment to the United States Constitution. The United States responded in opposition. (Doc. 27). For the reasons discussed below, the Motion to Dismiss Indictment is **DENIED**.

On August 20, 2024, a federal grand jury returned an Indictment charging Bowden with one count of being a felon in possession of a firearm in violation of 18 U.S.C. § 922(g)(1). Section 922(g)(1) provides in pertinent part that "[i]t shall be unlawful for any person . . . who has been convicted in any court of, a crime punishable by imprisonment for a term exceeding one year . . . [to] possess in or affecting commerce, any firearm." 18 U.S.C. § 922(g)(1).

On February 8, 2025, Bowden filed the instant Motion to Dismiss Indictment (Doc. 22). In his Motion, he argues that § 922(g)(1) violates the rights guaranteed to him by the Second Amendment of the United States Constitution. (Doc. 22, pp. 4–7). Bowden argues that, in light of the United States Supreme Court's decisions in *New*

*York State Rifle & Pistol Association, Inc. v. Bruen*, 597 U.S. 1 (2022) and *United States v. Rahimi*, 602 U.S. 680 (2024), the Second Amendment's plain text covers the charge in his Indictment and that the Government cannot meet its burden of proving that Section 922(g)(1) is part of the historical tradition that delimits the outer bounds of the right to keep and bear arms. *Id.* On February 20, 2025, the Government filed a Response in opposition. (Doc. 27).

Before delving too deeply into the analysis, Bowden notes in a footnote that "Defendant's Motion to Dismiss recites essentially verbatim the Third Circuit's opinion in *Range v. Attorney General*, 124 F.4th 218 (3rd Cir. 2024)." (Doc. 22, p. 2 n.1 (citing the same)). However, this Court notes that the Supreme Court granted certiorari, vacated the judgment, and remanded *Range* to the Third Circuit for further consideration in light of *Rahimi*. *Garland v. Range*, 144 S. Ct. 2706 (July 2, 2024) (citing *United States v. Rahimi*, 602 U.S. 680 (2024)).[1]

At the outset, the Court notes that Bowden does not point to a historical basis for *individualized* assessments and, even if he had, he has not demonstrated that Section 922(g)(1) is unconstitutional as applied to him. The recent Seventh Circuit decision in *Atkinson v. Garland*, 70 F.4th 1018 (7th Cir. 2023), required a party challenging the constitutionality of Section 922(g)(1) to develop a historical record that justified individual assessments. *See* 70 F.4th at 1023; *see also United States v. Gutierrez*, No. 22-2778, 2024 WL 1125080, at *12 (N.D. Ill. Sept. 4, 2024) (applying

---

[1] Other cases cited by the Defendant have also been abrogated. *See Binderup v. Attorney General*, 836 F.3d 336 (3rd Cir. 2016), *abrogation recognized in Pitsilides v. Barr*, 128 F.4th 203, 211 n.4 (3d Cir. 2025); *Kanter v. Barr*, 919 F.3d 437 (7th Cir. 2019), *abrogated by New York State Rifle & Pistol Ass'n, Inc. v. Bruen*, 597 U.S. 1 (2022); (Doc. 22, p. 3 (quoting *Binderup* at 344; *Kanter* at 452)).

*Atkinson* in the context of a criminal challenge to Section 922(g)(1)). As Atkinson did not develop this historical basis for individual assessments, the Seventh Circuit found that his argument fell short and remanded the case to develop this record further. *Atkinson*, 70 F.4th at 1023. In a similar vein, Bowden fails to develop any historical basis for individual assessment or to even cite *Atkinson* at all.

Bowden's motion is threadbare and contains misstatements of the Supreme Court's holding in *Bruen*. For example, Bowden argues that the lack of a distinctly similar historical regulations compels the conclusion that the statute is unconstitutional as applied to him. (Doc. 22, pp. 4–7). However, *Bruen* noted that a historical analogue need not be a "historical twin," but rather a "relatively similar" and "well-established and representative historical analogue" will pass constitutional muster. 597 U.S. at 30; *see Rahimi*, 602 U.S. at 692 ("The law must comport with the principles underlying the Second Amendment, but it need not be a 'dead ringer' or a 'historical twin.'" (citing *Bruen* at 30)). Therefore, the history must not demonstrate a tradition of *permanently* disarming those who are *like* Mr. Bowden, but rather simply analogous laws that are relatively similar. Further, Bowden misstates *Bruen's* discussion on historical regulations relating to longstanding societal problems. (Doc. 22, p. 6). Bowden states that if the Founders could have passed a particular regulation that would have confronted a longstanding societal problem but declined to do so, the lack of a regulation means that the regulation is unconstitutional. (*Id.*, pp. 6–7). However, *Bruen* made clear that such an absence of regulation merely serves as evidence of the unconstitutionality of such a regulation, not proof of unconstitutionality. 597 U.S. at 26. It is possible that the Founders did not exercise

the full extent of the Second Amendment, and thus requiring a historical twin, as Bowden's framing of *Bruen* required, would too severely limit the scope of permissible regulations on firearms. *See United States v. Rahimi*, 602 U.S. 680, 737–40 (2024) (Barrett, J., concurring).

Even if that were not the case, this Court recently issued an order on a similar Section 922(g)(1) challenge that discussed the history and traditions standard. *See United States v. Ware*, 2023 WL 3568606, at *1 (S.D. Ill. May 19, 2023). While some of the laws mentioned in the Court's previous history and traditions analysis would certainly fail present-day constitutional scrutiny and may not be worthwhile to factor into any future analysis under *Bruen* in retrospect, the Court finds, as others have before it, that Section 922(g)(1) is part of the historical tradition "that delimits the outer bounds of the right to keep and bear arms" under the Second Amendment, such that it is not unconstitutional as applied to Bowden. *Bruen*, 597 U.S. at 19.

As stated before, Bowden does little to rebut this conclusion. Rather than addressing laws which may in fact be sufficiently analogous to Section 922(g)(1), Bowden instead relies on conclusory statements of history. (Doc. 22, p. 4). Surety laws and going armed laws are just two examples of regulations which may be relevant to this historical inquiry yet were not addressed by Bowden. *See Rahimi*, 602 U.S. at 693–97. The Supreme Court has previously articulated that the history of these two laws established the principle that "[w]hen an individual poses a clear threat of physical violence to another, the threatening individual may be disarmed." *Id.* at 698.

Bowden's attempt to narrow the historical inquiry to only include laws which *permanently* disarmed felons *like* Mr. Bowden fails, again, because it misstates the

central holding of *Bruen,* that a historical analogue is required, not a historical twin. 597 U.S. at 27–29; *see Rahimi*, 602 U.S. at 692. This attempt to limit the historical analysis also fails because it misrepresents Section 922(g)(1) as a permanent disarming of felons. While § 922(g)(1) does disarm felons, it does not do so permanently, as the law does contain mechanisms to render the disarmament non-permanent. Importantly, this prohibition does not permanently extend to felons who have received a pardon, have had their record expunged, or who have received a restoration of their civil rights. 18 U.S.C. § 921(a)(20).

The preceding analysis notwithstanding, Bowden has not made a sufficient showing that Section 922(g)(1) would be unconstitutional as applied to him. A court may consider Bowden's criminal record in determining whether the defendant "poses a clear threat of physical violence to another." *Rahimi*, 602 U.S. at 698. The Court determines that Bowden's criminal history demonstrates such a threat. While Bowden insists that his prior convictions were nonviolent (Doc. 22, pp. 1, 7), the Government's discussion of his criminal history tells a different story. (Doc. 27, pp. 56–57). The Government cites *to United States v. Gay*, 98 F.4th 843 (7th Cir. 2024), *reh'g denied*, No. 23-2097, 2024 WL 3816648 (7th Cir. Aug. 14, 2024) for the proposition that an as-applied constitutional challenge to § 922(g)(1) "is an unsuccessful vehicle for felons who are not 'law abiding,[2] responsible citizens.'" (Doc. 56, p. 27 (citing *Gay*, 98 F.4th at 846–47; *Bruen*, 597 U.S. at 26, 70)). In *Gay*, the

---

[2] This quote as used in *Gay* and in *Bruen* has a hyphen between "law" and "abiding." *Gay* at 846, *Bruen* at 26. This exact quote from the Government's brief is used for accuracy. (*See* Doc. 27, p. 57).

Defendant had been "convicted of 22 felonies, including aggravated battery of a peace officer and possessing a weapon while in prison." *Id.* at 847.

As both Bowden and the Government note, Defendant was convicted of possession of cocaine base with the intent to distribute in 2008. *See United States v. Bowden*, No. 06-cr-00693-HEA (E.D. Mo. 2008). He was sentenced to sixty months' imprisonment and four years of supervised release. *Id.* (Doc. 61). The Government writes that this distribution was related to Bowden's membership in a St. Louis gang; Defendant maintained a "safe house" where he kept large amounts of cocaine, money, and weapons for the gang. (Doc. 27, p. 57 (citing *United States v. Bowden*, No. 4:06CR693 CDP, 2007 WL 2303338, at *2 (E.D. Mo. Aug. 8, 2007), *report and recommendation adopted*, No. 4:06CR693 CDP, 2007 WL 2702641 (E.D. Mo. Sept. 12, 2007))). He was later convicted of being a felon in possession of a firearm in 2018. *See United States v. Bowden*, No. 17-cr-00212-AGF-1 (E.D. Mo. 2018). He was sentenced to twenty-seven months' imprisonment and three years of supervised release. *See id.* (Doc. 109).

In the instant offense, the Government states that "Defendant possessed a firearm—after having been recently convicted of the exact offense—while he was drunk driving." (Doc. 57). Bowden then led "police on a high-speed chase, where he abandoned his vehicle on the entrance of the MLK Bridge and attempted to flee custody by fighting an East St. Louis police officer" and then "[a]fter Defendant was secured in custody, he escaped from the back of a patrol car, jumped off of the on-ramp to Interstate-64, and began another foot chase across all lanes of traffic before finally being apprehended." (*Id.*). Thus, there is no colorable argument that

Defendant Bowden is a "law-abiding citizen" with his criminal history and considering the factual basis of the circumstances surrounding the underlying offense.

While this Court is not willing to say that an as-applied challenge to § 922(g)(1) could *never* be successful, the facts of this case do not cast any doubt on the constitutionality of this prohibition. In this case, neither the underlying felony nor the amount of time that has lapsed since the committing of that felony demonstrates that Section 922(g)(1) as applied to Bowden is unconstitutional. Rather, the facts of this case firmly place Bowden's prohibition on the possession of firearms within the limits of the Second Amendment. For these reasons, the Court finds that Bowden's Section 922(g)(1) charge in the Indictment is constitutional and his Motion to Dismiss the Indictment (Doc. 22) is **DENIED**.

**IT IS SO ORDERED.**

**DATED:  March 20, 2025**

*s/ Stephen P. McGlynn*
**STEPHEN P. McGLYNN**
**U.S. District Judge**
